**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

DAVID MEANIX,

*Plaintiff,*

v.

ABELSON-TAYLOR, INC., an Illinois
corporation,

*Defendant.*

Case No. 19-cv-2840

**Complaint For Damages**
**Jury Demanded**

Plaintiff David Meanix, for his complaint against Abelson-Taylor, Inc. ("AbelsonTaylor" or "Defendant") seeking damages for willful copyright infringement, unfair competition, and recovery in equity under the doctrines of quantum meruit, restitution, and unjust enrichment for breach of an implied-in-law contract under the common law of the State of New York, by and through undersigned counsel, alleges, upon personal knowledge as to himself and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1.      This action arises out of Defendant's willful copying and misappropriation of Mr. Meanix's photographic work ("artwork") for use in a highly lucrative advertising campaign on behalf of Sunovion Pharmaceuticals, Inc. ("Sunovion") in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* (the "Copyright Act"), and numerous equitable and common law doctrines of the State of New York.  Defendant AbelsonTaylor engaged with Mr. Meanix in a series of negotiations to use his artwork in an advertising campaign for a psychotherapy drug called Latuda® (the "Latuda Campaign"), which included various requests for samples of Mr. Meanix's artwork. Subsequent to those negotiations, AbelsonTaylor lied to Mr. Meanix, explaining that

AbelsonTaylor would not be using Mr. Meanix's artwork for the Latuda Campaign.  In fact, AbelsonTaylor copied Mr. Meanix's submitted samples to create its Latuda Campaign.  These unlawful actions violate the Copyright Act and common law principles of the State of New York.

　　　2.　　As illustrated below by a side-by-side comparison of Mr. Meanix's artwork and the work "created" by AbelsonTaylor for the Latuda Campaign, the Defendant copied Mr. Meanix's artwork for use in advertisements relating to the Latuda Campaign.[1]

**Mr. Meanix's Photographs**　　　　　　　　　　　　　　**Defendant's Advertisements**

  

"Theorist 1"　　　　　　"Theorist 2"

  

"Breeding Ground"　　　HBO Series "Six Feet Under"

---

[1] The images in this paragraph are true and correct copies of the examples of some of Mr. Meanix's artwork, which was provided to AbelsonTaylor at its request.  The full catalog of true and correct copies of Mr. Meanix's artwork available to the Defendant is documented in Exhibit A to this Complaint.

**Mr. Meanix's Photographs**                                      **Defendant's Advertisements**

                                     

"Mrs. Future"                    HBO Series "Six Feet Under"

3.      The purpose of the Copyright Act is to afford consistent protection to original works of authorship fixed in any tangible medium of expression.  This protection extends to photographs.

4.      The Copyright Act protects an author's original, unique expression of ideas, concepts, principles, or processes, and prevents others from copying such expression.  Copying involves creating a work that is substantially similar to the artist's original expression.  Substantial similarity does not require identical copying of every detail. Instead, the inquiry is whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work. As noted below, Mr. Meanix's acquaintance observed AbelsonTaylor's Latuda Campaign and immediately recognized it as Mr. Meanix's artwork.

## PARTIES

5.      Plaintiff David Meanix is an individual who resides and is domiciled in the State of New York at 475 West 57th Street, 28D2, New York, New York 10019.  He is an independent artist who combines photography and sculpture. Mr. Meanix's artwork is well-known.  He has exhibited his artwork at independent exhibitions in New York City and Los Angeles, as well as more than thirty group exhibitions in the United States and abroad. Mr. Meanix's artwork was also featured on the HBO series "Six Feet Under." His "Six Feet Under" series was published after winning exclusive, esteemed recognition in the industry journal *Communication Arts*.   Other

3

prominent publications featuring his artwork include *Huffington Post*, *Blouin Artinfo International, Salon.com*, and *Guernica*.

6.      Defendant AbelsonTaylor is an Illinois corporation with its principal place of business located at 33 West Monroe Street, Chicago, Illinois 60603. AbelsonTaylor is an advertising and marketing agency that describes itself as the "world's largest independent full-service health and wellness ad agency."[2]   AbelsonTaylor creates marketing and advertising campaigns for multibillion-dollar pharmaceutical and healthcare companies around the world.

## JURISDICTION AND VENUE

7.      This is an action arising under, *inter alia*, the Copyright Act of 1976, 17 U.S.C. §§101 *et seq*, and this Court has exclusive subject matter jurisdiction under 28 U.S.C. §1338(a). This Court has supplemental jurisdiction over the state law causes of action asserted in this Complaint pursuant to 28 U.S.C. § 1367 because the state law claims arise out of the same case or controversy.   This Court also has diversity jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332 because complete diversity exists between the parties, and the amount-in-controversy exceeds $75,000.

8.      AbelsonTaylor is subject to personal jurisdiction in this Court because of its minimum contacts with New York, including, *inter alia*, transacting business in the State of New York and negotiating with Mr. Meanix for performance of a contractual agreement in New York.

9.      Under 28 U.S.C. § 1391, this Court is a proper venue for this case because the acts or omissions giving rise to this action occurred in this district.

---

[2] Facebook, AbelsonTaylor Facebook Page, https://www.facebook.com/AbelsonTaylor/ (last visited Mar. 29, 2019).

## FACTUAL BACKGROUND

### Mr. Meanix's Unique Photosculpture Style and Works

10.    Mr. Meanix is an artist, photographer, and sculptor skilled in 3-D printing, sculpture, macrophotography, papier-mâché, and photographing models to create narratives. Mr. Meanix specializes in "photosculpture"—a technique that he pioneered in 1995 as an Interdisciplinary Arts major at San Francisco State University—which he uses to create images of human faces with a "torn-paper" expression.

11.    Mr. Meanix holds copyright registrations to four published photographs—Theorist 1, Theorist 2, Savasana, and Tatiana—which are registered under the collective title "The Body Modified," Copyright No. VA 1-435-593, effective as of September 6, 2011. Mr. Meanix is the exclusive owner of all rights, title, and interest in and to the copyright of "The Body Modified."

### AbelsonTaylor's Solicitation of Mr. Meanix for the Latuda Campaign

12.    On June 10, 2010 (the "June 10, 2010 Email"), AbelsonTaylor's art buyer, Dana Evert, emailed Mr. Meanix after one of AbelsonTaylor's creative directors expressed an interest in Mr. Meanix's artwork. She contacted Mr. Meanix to ask for samples of his artwork for an advertising campaign it was creating for a pharmaceutical drug intended for the treatment of schizophrenia, which Mr. Meanix later learned was Sunovion's Latuda®.

13.    In the June 10, 2010 Email, Ms. Evert also requested that Mr. Meanix send her an additional sample of "torn people" with "more of an optimistic look and feel."

14.    On June 13, 2010, Mr. Meanix responded to Ms. Evert's request by sending this sample of his artwork:


"Perfection"

15.    Ms. Evert replied to Mr. Meanix on June 14, 2010, telling him that AbelsonTaylor had decided to go in a different direction.

16.    On June 18, 2010, Jodi Miller, Director of Art and Talent Purchasing at AbelsonTaylor, contacted Mr. Meanix to notify him that AbelsonTaylor's Associate Creative Director, Brad Graetz, was in fact interested in Mr. Meanix's artwork and to request additional samples from Mr. Meanix.  Ms. Miller asked Mr. Meanix to resend to her Mr. Meanix's original email that he had sent to Ms. Evert containing images conveying a "torn-paper" expression from his prior projects and also to include additional images of prior projects he had done that had the following specific characteristics: (1) "Portrait in [Mr. Meanix's] mosaic style;" (2) "Age range 30 – 50;" and (3) "Preferably men."   Ms. Miller stated that the project had been "revived" and asked Mr. Meanix what the fee would be to use his high resolution images in AbelsonTaylor's "presentation" to one of AbelsonTaylor's clients, which Mr. Meanix later learned was Sunovion and would be used in the Latuda Campaign.

17.    In response, through a series of emails dated June 18 and June 19, 2010, Mr. Meanix provided at least eight high resolution images (some of which he had previously provided) via

email and a link to his website—www.davidmeanix.com—which included five portfolios of "torn-paper" expressions.  His emails included the following images:



"Breeding Ground"



HBO Series "Six Feet Under"



"Mrs. Future"



"See Through"



HBO Series "Six Feet Under"



HBO Series "Six Feet Under"



"Theorist 1"



"Theorist 2"

18.     Mr. Meanix also asked Ms. Miller at that time whether her request regarding the "presentation" compensation fee referred to his fee for creating a new piece.  On June 18, 2010, Ms. Miller clarified that the "presentation" compensation fee related to an initial fee for use of his images in a presentation and testing layout, but that if his artwork were chosen, AbelsonTaylor would have him create a new piece for it.

19.     Mr. Graetz, in a reply email, confirmed Ms. Miller's statement, saying, "That's correct … we would create a new image if it goes all the way to campaign selection."

20.     Ms. Miller further confirmed in a third email that AbelsonTaylor was interested in Mr. Meanix's artwork specifically because of its "torn-paper" expression, and that they would "want to create a new image with [Mr. Meanix]," with a customized patient type, "if this concept is selected."

21.     On June 23, 2010, Mr. Meanix spoke with Mr. Graetz, who informed him that AbelsonTaylor was "going in a different direction" for the Latuda Campaign, and thus would not be using the "torn-paper" expression in the Latuda Campaign.

**AbelsonTaylor's Latuda Campaign**

22.    The Latuda Campaign launched in 2011 and included the following images:

 

23.    The images that the Defendant created were included in the product marketing and literature for Latuda®, including at least on enlarged bus advertisements at the annual conference of the American Psychiatric Association ("APA"), in booths and pamphlets at that conference, on the jacket cover of *APA Psych News* and *Current Psychology*, in the pages of *Archives of General Psychology*, *The Journal of Clinical Psychiatry*, and *The American Journal of Psychiatry*, and in direct mail posters to psychiatrists' offices nationwide.

24.    The Latuda Campaign was a resounding success for both Sunovion and AbelsonTaylor.

25.    In 2012 alone, Sunovion reported Latuda® revenues of up to $202 million, or nearly 15% of its total annual revenues, and Sunovion has continued to generate blockbuster revenue from the drug.  In 2015, Latuda® surpassed $1 billion in revenue in North America alone, and it recorded sales of $1.2 billion in 2016.

26.    AbelsonTaylor has stated that the Latuda Campaign launch was one of its major highlights for 2011. AbelsonTaylor also won an Award of Excellence from the RX Club for the

Latuda Campaign and was a finalist for a *PM360* Trailblazer Award for Best Project Launch in 2012.

27.     Sunovion continued to use the above images to promote Latuda® through at least August 28, 2016.

<u>**Latuda Campaign Looked Like Mr. Meanix's Work**</u>

28.     In 2011, Mr. Meanix's acquaintance saw the Latuda Campaign images on the jacket cover of *APA Psych News* and *Current Psychology* and within the pages of other psychiatry journals, and immediately recognized the images as Mr. Meanix's artwork.  The acquaintance then contacted Mr. Meanix to congratulate him on having his artwork used to advertise Latuda® at, among other places, the APA annual conference.

29.     Mr. Meanix was shocked to learn that AbelsonTaylor had in fact not taken its advertising campaign in a different direction as Mr. Graetz had said.  Instead, AbelsonTaylor copied Mr. Meanix's artwork from the photographs he provided to AbelsonTaylor in order to replicate his "torn-paper" expression for the Latuda Campaign, without Mr. Meanix's consent and without compensating him.

30.     Indeed, at one point in later discussions with Mr. Meanix, Ms. Miller admitted that the agency took Mr. Meanix's photographs and used them to create sketches of desired images to be used in the Latuda Campaign.

<u>**AbelsonTaylor's 2017 Latuda Campaign**</u>

31.     In January 2017, the Food & Drug Administration (the "FDA") approved Latuda® for a new indication *i.e.*, the treatment of schizophrenia in adolescents aged 13 to 17 years.

32.     On January 11, 2017, counsel for Mr. Meanix sent a letter to AbelsonTaylor, alerting AbelsonTaylor that it was violating Mr. Meanix's copyright in "The Body Modified."

33.     Following the FDA's approval of Latuda's new indication, AbelsonTaylor created and launched a second campaign for Latuda® (the "Second Latuda Campaign"), copying Mr. Meanix's "torn-paper" expression and producing images of younger patients:



34.     Like the Latuda Campaign, the Second Latuda Campaign was a resounding success for both AbelsonTaylor and Sunovion.  In September 2017, the "LATUDA® Adolescent Schizophrenia 'Fragments' Campaign" received recognition as a "Professional Campaign: Gold Winner" from leading health marketing industry trade magazine *PM360*.

35.     The *PM360* article announcing the award stated, "Don't mess with success." It continued, "LATUDA® has been widely successful for Sunovion." *PM360* recognized that "[o]ne reason for that success [was] [t]he popular 'Fragments' campaign developed with AbelsonTaylor that featured an adult patient with schizophrenia in fragmented pieces to represent the disease state in a highly emotional, yet meaningful and respectful manner."

36.     *PM360* concluded, "So, when Sunovion pushed for and received an expanded indication for LATUDA® to also treat adolescents aged 13-17 with schizophrenia, it only made sense to once again go with what worked so well before."

37.    As of the date of this Complaint, Sunovion continues to market Latuda® to adolescents by using the images on its website, among other continued uses:



## CAUSES OF ACTION

### First Cause of Action: Copyright Infringement

38.     Mr. Meanix restates and realleges the allegations in Paragraphs 1-37 of this Complaint as though fully set forth herein.

39.     Mr. Meanix is the original author of "The Body Modified," Copyright No. VA 1-435-593, and is the exclusive holder of all rights, title, and interest to that copyrighted work.

40.     Mr. Meanix made samples of his work, including two images from "The Body Modified," available to Defendant AbelsonTaylor in conjunction with his potential engagement for the Latuda Campaign.

41.     Ms. Miller asked Mr. Meanix to include in his email submission to AbelsonTaylor for consideration of his artwork to be used in the Latuda Campaign high resolution images with the following specific characteristics: (1) "Portrait in [Mr. Meanix's] mosaic style;" (2) "Age range 30 – 50;" and (3) "Preferably men."

42.     Among other images, Mr. Meanix provided the following copyrighted photographs in response to Ms. Miller's request:





"Theorist 1"                                                       "Theorist 2"

13

43.     AbelsonTaylor had access to Mr. Meanix's copyrighted works throughout the time that AbelsonTaylor was creating its Latuda Campaign.

44.     During Mr. Meanix's telephone conversation with Ms. Miller in 2015, Ms. Miller revealed that AbelsonTaylor "did sketches once [it] got the scope of what [it] wanted to do for the presentation" to Sunovion for the Latuda Campaign and then created the Latuda Campaign images based on those sketches.

45.     Thus, AbelsonTaylor, having access to high resolution samples of Mr. Meanix's artwork, sketched images based on Mr. Meanix's artwork and then produced photographs substantially similar to the ones Mr. Meanix provided, resulting in the copying of Mr. Meanix's artwork without his consent.

46.     AbelsonTaylor's Latuda Campaign portrayed a "torn-paper" expression of a man between the ages of 30 and 50:



47.     The Latuda Campaign images are substantially similar to Mr. Meanix's copyrighted photographs, and they improperly appropriate the "torn-paper" expression unique to his artwork.  The Latuda Campaign images are also substantially similar to Mr. Meanix's artwork with respect to at least mood, posing, facial expressions, and spatial composition of the subjects.

14

All of the aforementioned elements, as well as the concept and feel created by those elements together, are original and protectable elements of Mr. Meanix's artwork.

48.   An ordinary observer would recognize the Latuda Campaign images as having been appropriated from Mr. Meanix's artwork.  Indeed, Mr. Meanix's acquaintance confused the Latuda Campaign images for Mr. Meanix's artwork.

49.   AbelsonTaylor did not have permission to use Mr. Meanix's artwork as the basis for the Latuda Campaign or to distribute copies of images derived from Mr. Meanix's artwork.

50.   With its Latuda Campaign, AbelsonTaylor infringed Mr. Meanix's copyright in "The Body Modified," and continued to use the infringing campaign until at least August 28, 2016.

51.   AbelsonTaylor's actions, as described above, infringe upon the exclusive rights of Mr. Meanix granted by Section 106 of the Copyright Act, 17 U.S.C. § 106, to reproduce, distribute, publicly display, and prepare derivative works based on "The Body Modified."

52.   These actions constitute copyright infringement under Section 501 of the Copyright Act, 17 U.S.C. § 501.

53.   By creating the Second Latuda Campaign, AbelsonTaylor also willfully infringed Mr. Meanix's copyright in "The Body Modified," under Section 504(c)(2) of the Copyright Act, 17 U.S.C. § 504(c)(2).

54.   AbelsonTaylor chose to use Mr. Meanix's artwork a second time without his permission for a separate advertising campaign even after being made aware of the infringement resulting from the Latuda Campaign.

55.   AbelsonTaylor knew that it might be infringing Mr. Meanix's copyright before the Second Latuda Campaign and consciously disregarded Mr. Meanix's rights.

56.     As a direct and proximate result of these acts, Mr. Meanix has sustained and will continue to sustain financial loss, loss of good will, loss of profits, loss of business opportunities, and loss of control over the marketing and use of his copyrighted works.

57.     Because of AbelsonTaylor's willful copyright infringement, Mr. Meanix is entitled to relief including, but not limited to, actual or statutory damages, statutory costs and attorneys' fees, and prejudgment interest to be determined at trial by a jury.

**Second Cause of Action: Unfair Competition by AbelsonTaylor**

58.     Mr. Meanix restates and realleges the allegations in Paragraphs 1-57 of this Complaint as though fully set forth herein.

59.     AbelsonTaylor engaged in unfair competition under the laws of the State of New York when it treated Mr. Meanix unfairly in its procurement of sample images from Mr. Meanix and subsequently misrepresented to Mr. Meanix that the Latuda Campaign had been taken in a different direction.

60.     AbelsonTaylor acted in bad faith and treated Mr. Meanix unfairly when it repeatedly requested that Mr. Meanix send samples of his artwork with specific characteristics as it was developing the Latuda Campaign. Based on AbelsonTaylor's interest in his artwork, Mr. Meanix complied with AbelsonTaylor's request for samples. After receiving these images, AbelsonTaylor misrepresented to Mr. Meanix that the Latuda Campaign had been taken in a different direction. Contrary to this representation, AbelsonTaylor actually used Mr. Meanix's artwork to define the direction of the Latuda Campaign.

61.     In fact, after having received Mr. Meanix's artwork, AbelsonTaylor admitted that it "did sketches once [it] got the scope of what [it] wanted to do for the presentation" to Sunovion and then created the Latuda Campaign images based on those sketches.

62.     AbelsonTaylor obtained sample images from Mr. Meanix in bad faith and lied to Mr. Meanix about its use of those samples in its creation of the Latuda Campaign.

## Third Cause of Action: Quantum Meruit

63.     Mr. Meanix restates and realleges the allegations in Paragraphs 1-62 of this Complaint as though fully set forth herein.

64.     Mr. Meanix seeks to recover the reasonable value of the services he rendered to AbelsonTaylor under the New York common law equitable doctrine of *quantum meruit* for AbelsonTaylor's breach of its implied-in-law contract with Mr. Meanix.

65.     Mr. Meanix performed services for AbelsonTaylor in good faith when he submitted samples of his artwork to AbelsonTaylor for the purpose of being presented for consideration in the Latuda Campaign and, if chosen, being hired to produce a new image for the Latuda Campaign.

66.     AbelsonTaylor accepted performance of his services, which was confirmed when Ms. Miller admitted during a phone call in 2015 that AbelsonTaylor used Mr. Meanix's photographs and "did sketches once [it] got the scope of what [it] wanted to do for the presentation" and then created the Latuda Campaign images based on those sketches. Moreover, AbelsonTaylor used Mr. Meanix's photographs—expressions of how schizophrenia effectively tears apart those patients suffering from the disease—to launch its Latuda Campaign.

67.     Mr. Meanix had a reasonable expectation of compensation if his services were (1) presented for consideration in the Latuda Campaign and (2) accepted for the Latuda Campaign, because AbelsonTaylor specifically told Mr. Meanix that, if the concept as expressed in his artwork was chosen, he would be hired to create a new image for the Latuda Campaign. Moreover, Mr. Meanix submitted samples of his artwork as a result of AbelsonTaylor's request.

68.     The reasonable value of Mr. Meanix's services is ascertainable through discovery and can be determined at trial.

### Fourth Cause of Action: Unjust Enrichment and Restitution

69.     Mr. Meanix restates and realleges the allegations in Paragraphs 1-68 of this Complaint as though fully set forth herein.

70.     Mr. Meanix seeks to recover under the New York common law equitable doctrine of restitution the amount by which AbelsonTaylor was unjustly enriched as a result of its breach of its implied-in-law contract with Mr. Meanix.

71.     AbelsonTaylor profited from its unauthorized use of Mr. Meanix's  artwork, which used "torn-paper" expression to depict individuals suffering from schizophrenia. Mr. Meanix's idea and its expression are original and novel in that he pioneered the photosculpture technique while a student in college. AbelsonTaylor used his "torn-paper" expression to depict people suffering from schizophrenia as the basis for its Latuda Campaign and the Second Latuda Campaign.

72.     AbelsonTaylor was enriched at Mr. Meanix's expense. AbelsonTaylor earned monetary profits and industry prestige from its successful Latuda Campaign and Second Latuda Campaign, while Mr. Meanix received no compensation, acknowledgement, or credit for the use of his artwork.

73.     AbelsonTaylor's gain was at Mr. Meanix's expense. AbelsonTaylor deprived Mr. Meanix of the ability to showcase his artwork by copying his photosculptures without including him in the Latuda Campaign and Second Latuda Campaign. Just as AbelsonTaylor's reputation, goodwill, and market recognition enjoyed a boost in the advertising industry, so too would Mr.

Meanix's reputation as an artist in the specialties of both photography and sculpture had he been given his just recognition.

74.     AbelsonTaylor knew or should have known that it had commandeered Mr. Meanix's artwork without compensating him. AbelsonTaylor continued to do so even after being made aware of its unlawful actions by an attorney in January 2017.

75.     Mr. Meanix is entitled to recover damages in an amount to be determined at trial.

## JURY TRIAL DEMAND

76.     Pursuant to Federal Rule of Civil Procedure 38(b), Mr. Meanix demands a trial by jury.

## RELIEF REQUESTED

WHEREFORE, Mr. Meanix respectfully requests that this Court:

I.      Enter an order permanently enjoining the Defendant from infringing Mr. Meanix's copyright in "The Body Modified" pursuant to Section 502 of the Copyright Act, 17 U.S.C. § 502;

II.     Award Mr. Meanix the Defendant's profits and other damages in an amount to be determined at trial;

III.    Award Mr. Meanix statutory damages pursuant to 17 U.S.C. § 504(c);

IV.     Award Mr. Meanix reimbursement of the costs, expenses and attorneys' fees incurred in this action pursuant to 17 U.S.C. § 505;

V.      Award Mr. Meanix damages from the Defendant for unfair competition under the common law of the State of New York;

VI.     Award Mr. Meanix damages from the Defendant for breach of an implied-in-law contract in accordance with equitable doctrines under the laws of the State of New York;

VII.       Award pre-judgment and post-judgment interest on the amount of any award issued

to Mr. Meanix; and

VIII.      Grant such other and further relief as this Court deems just and proper.

Dated: New York, New York

     March 29, 2019                        VINSON & ELKINS LLP


                                   By: /s/ Hilary L. Preston

                                     Hilary L. Preston
                                     Laurel S. Fensterstock
                                     Trey Hebert (*pro hac vice* application
                                         to be submitted)
                                   W. Logan Lewis (*pro hac vice* application
                                         to be submitted)
                                   VINSON & ELKINS LLP
                                   666 Fifth Avenue, 26th Floor
                                   New York, NY  10103-0040
                                   Telephone: +1.212.237.0000
                                   Fax: +1.212.237.0100

                                   *Attorneys for David Meanix*